Filed 6/7/21 Certified for Publication 6/25/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LAWRENCE PASTERNACK,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>THOMAS B. MCCULLOUGH, JR.,<br>et al.,<br><br>      Defendants and Respondents. | B302137<br><br>(Los Angeles County<br>Super. Ct. No. SC121723) |

APPEAL from an order of the Superior Court of Los Angeles County.  Craig D. Karlan, Judge.  Affirmed.

Hatton, Petrie & Stackler, Gregory M. Hatton, Arthur R. Petrie, II and John A. McMahon for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Roy G. Weatherup, Bartley L. Becker and Caroline E. Chan for Defendants and Respondents.

_____

Lawrence Pasternack sued Thomas McCullough, Jr. and his law firm (collectively, McCullough) for malicious prosecution. In 2018, we reversed an order denying McCullough's special motion to strike under the anti-strategic lawsuits against public participation (anti-SLAPP) statute. (Code Civ. Proc., § 425.16.)[1] In our disposition, we ordered the trial court to issue a fee award pursuant to section 425.16, subdivision (c)(1), which entitles a prevailing defendant on a special motion to strike to recover his attorney fees and costs. This appeal arises from the resulting attorney fees award of $146,010 to McCullough. Pasternack's primary dispute with the award is that the trial court erroneously ordered him to pay an hourly rate for attorney fees that was greater than what was actually paid for McCullough's defense. We conclude the trial court properly determined the reasonable market value of the attorneys' services and affirm the attorney fees order.

## PROCEDURAL BACKGROUND[2]

On remand from our 2018 decision, McCullough moved for entry of judgment and sought attorney fees in the amount of $330,420. Lewis, Brisbois, Bisgaard & Smith LLP (Lewis Brisbois) represents McCullough in these proceedings. The Lewis Brisbois attorneys presented declarations and a time chart

---

[1]     All further section references are to the Code of Civil Procedure unless otherwise specified.

[2]     We need not repeat the facts underlying the malicious prosecution case against McCullough. They are extensively discussed in our previous opinion, *Pasternack v. McCullough* (Feb. 6, 2018, No. B272097) [nonpub. opn.].

showing they expended over 500 hours on the action and attested their market rates ranged from $300 to $600 per hour.

Pasternack opposed McCullough's fee motion, arguing the hours claimed were excessive and disputing the amount of the hourly fees. He submitted a letter from Roy Weatherup, McCullough's lead counsel on appeal. Weatherup explained McCullough's defense was paid by his insurer at a rate of $140 per hour; Pasternack's lawsuit against McCullough was part of a block of hundreds of cases in which Lewis Brisbois gave a volume discount.

Pasternack also submitted an expert declaration from a former Lewis Brisbois partner explaining why insurance defense firms accept lower hourly rates in exchange for large volumes of case assignments from insurance companies. He asserted the agreed-upon rates are not "below market" because they are a product of an arms-length negotiation. These lower rates are profitable for the law firm because there is no measurable risk of nonpayment and such an arrangement serves as a gateway for future business. Insurance clients are courted by defense firms, in part because a defense firm becomes efficient in handling similar cases by building up resources -- such as standard briefs -- from prior similar cases. In this case, for example, Weatherup had extensive experience in anti-SLAPP matters and the issue raised in the prior appeal.

The trial court granted McCullough's attorney fees motion by order dated August 28, 2019 and awarded McCullough $146,010 in fees using the lodestar method. It struck time that was billed for activity unrelated to the motion to strike and that was "block billed" or failed to specify the tasks accomplished. The court further found "the nature and complexity of the legal issues

3

on appeal [did] not warrant 528.1 hours of work performed by two partners billing at the rate of $600." Thus, the court not only reduced the hours claimed by the attorneys but also reduced the hourly rate requested by one of the partners from $600 to $250 per hour.

The trial court declined to adopt Pasternack's suggested market rate of $140 per hour for each attorney. The court explained, "First, $140 per hour is not the market rate for experienced appellate lawyers in Los Angeles County and the Court exercises its discretion to not so narrowly focus on the 'package rate' agreed to in this matter, especially since the specific rate for handling anti-SLAPP appeals remains unclear; neither [Pasternack's attorney nor the expert presented] sufficient information for the Court to conclude that $140 is the prevailing market rate for anti-SLAPP appeals in the insurance defense setting. Second, the Court finds the reduced amount awarded herein fully compensates Defendants for their work in this matter in light of Defendants' extensive prior experience handling appeals involving the 'interim adverse judgment rule.' "

Pasternack moved for reconsideration of the fee award, presenting additional evidence to show the prevailing market rate for anti-SLAPP appeals in the insurance defense setting was $140 per hour. Based on the trial court's previous determination of the hours reasonably expended on the anti-SLAPP motion and a $140 per hour market rate, Pasternack calculated the total attorney fees to be $49,126. The trial court denied the motion for reconsideration and Pasternack timely appealed.

4

## DISCUSSION

The primary issue on appeal is whether the trial court erred when it applied hourly rates to its lodestar analysis that exceeded the hourly rate actually paid by McCullough's insurer for his defense. Relying on cases not involving attorney fees, Pasternack contends prevailing parties may not recover more than the actual fees they paid under a "paid in full" or "make whole" rule.[3] We are not persuaded.

We review a trial court's fee award using an abuse of discretion standard. (*Hjelm v. Prometheus Real Estate Group, Inc.* (2016) 3 Cal.App.5th 1155, 1177.) We conclude the trial court did not abuse its discretion in this case.[4] It is well

[3] We decline to follow the non-attorney-fees cases cited by Pasternack. They are distinguishable on subject matter alone. (See *Parnell v. Adventist Health System/West* (2005) 35 Cal.4th 595 [hospitals may not collect from a third party more than the amount owed by a patient's health plan]; *Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541 [injury victims may not collect damages for medical bills in excess of the amount their health plan paid]; *Hand Electronics, Inc. v. Snowline Joint Unified School Dist.* (1994) 21 Cal.App.4th 862, 870 [damages limited to actual or reasonable cost of auto repair].) We find case law addressing attorney fees, discussed in the text, to be more persuasive and relevant to the issue at hand.

[4] Although Pasternack acknowledges the abuse of discretion standard applies to appeals of attorney fee awards, he contends the standard of review in this case should be de novo because his appeal presents a pure legal question: whether a trial court has any discretion to award a greater hourly fee than that bargained for and accepted as payment in full by the prevailing party's counsel. The legal question posited by Pasternack has been

5

established that an attorney who accepts a reduced rate from a client is not precluded from seeking a reasonable hourly rate pursuant to the lodestar method.  " 'The reasonable market value of the attorney's services is the measure of a reasonable hourly rate.  [Citations.]  This standard applies regardless of whether the attorneys claiming fees charge nothing for their services, charge at below-market or discounted rates, represent the client on a straight contingent fee basis, or are in-house counsel. [Citations.]' " (*Chacon v. Litke* (2010) 181 Cal.App.4th 1234, 1260 (*Chacon*); *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084 (*PLCM*); Cal. Civil Courtroom Handbook & Desktop Ref. (2020 ed.) Court Determination of Statutory Attorney Fees Amount, § 41:30.)

Section 425.16, subdivision (c)(1) of the anti-SLAPP statute entitles a prevailing defendant on a special motion to strike to recover his or her attorney fees and costs.  "[B]ecause the anti-SLAPP [attorney fee] provisions referred to attorney fees and costs without indicating any restrictions on how they are to be calculated, we accordingly presume that the Legislature intended courts use the prevailing lodestar adjustment method. [Citation.]" (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1136.) The method begins with ascertainment of the lodestar, i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate.  (*Mountjoy v. Bank of America, N.A.* (2016) 245 Cal.App.4th 266, 271–282.)  The lodestar figure may then be adjusted, based on factors specific to the case, to fix the

_____

answered by the California Supreme Court and the Courts of Appeal.  Given this authority, we need only consider whether the trial court abused its discretion.

fee at the fair market value for the legal services provided. (*PLCM, supra,* 22 Cal.4th at p. 1095.)

To determine the reasonable hourly rate, courts consider the rate prevailing in the community for similar work. (*In re Tobacco Cases I* (2013) 216 Cal.App.4th 570, 582.) This market rate approach has been applied in cases involving in-house counsel, contingency fees, and pro bono work. In each of these cases, courts have refused to limit the market rate to the attorney's fee arrangement with the prevailing party. (*PLCM, supra,* 22 Cal.4th at p. 1096; *Persson v. Smart Inventions, Inc.* (2005) 125 Cal.App.4th 1141, 1172–1176 [contingency agreement]; *Rosenauer v. Scherer* (2001) 88 Cal.App.4th 260, 284–287 [pro bono].) "Although the terms of [a fee] contract may be considered, they 'do not compel any particular award.' [Citations.]" (*PLCM, supra,* 22 Cal.4th at p. 1096.)

In *PLCM,* the Supreme Court affirmed a corporate plaintiff's entitlement to attorney fees under the contractual attorney fees provision of Civil Code section 1717, even though the plaintiff was represented by its in-house counsel. (*PLCM, supra,* 22 Cal.4th at p. 1091.) The defendant urged the court to adopt a "cost-plus" approach based on a precise calculation of the actual salary, costs, and overhead of in-house counsel. (*Id.* at p. 1096.) The court refused, concluding "the lodestar method, as applied to the calculation of attorney fees for in-house counsel is presumably reasonable, although in exceptional circumstances, the trial court is not precluded from using other methodologies." (*Id.* at p. 1097.) It noted, "That is not to say that reasonable attorney fees under Civil Code section 1717 will not reflect many of the same factors considered in a cost-plus approach. Moreover, generally prevailing market rates necessarily take into

7

consideration such factors as salaries, overhead, the costs of support personnel, and incidental expenses." (*PLCM, supra,* at p. 1097.)

Relying on *PLCM*, this court previously declined to cap the reasonable hourly rate to what was actually paid by an insurer in *Nemecek & Cole v. Horn* (2012) 208 Cal.App.4th 641, 651 (*Nemecek*). There, a client claimed a law firm was negligent in its representation of him in a lawsuit. The law firm tendered its defense to its insurer. The parties' retainer agreement contained an arbitration clause and an attorney fees provision. The arbitrator found the law firm was the prevailing party. (*Id.* at p. 644.) The trial court confirmed the arbitration award and entered judgment in favor of the law firm. It also awarded attorney fees incurred by the law firm in filing its petition to confirm the arbitration award. (*Id.* at p. 645.)

On appeal, the client argued the trial court abused its discretion when it applied an hourly rate to its lodestar calculation that was approximately double what the insurer actually paid for the law firm's defense. (*Nemecek, supra,* 208 Cal.App.4th at pp. 650–651.) The client presented expert testimony that counsel for the law firm billed the insurer $100 to $215 per hour for attorney services in the arbitration. The law firm's counsel sought an hourly rate based on the *Laffey* Matrix[5]

---

[5] The *Laffey* Matrix is a United States Department of Justice billing matrix that provides billing rates for attorneys at various experience levels in the Washington, D.C. area and can be adjusted to establish comparable billing rates in other areas using data from the United States Bureau of Labor Statistics. (See *Laffey v. Northwest Airlines, Inc.* (D.D.C. 1983) 572 F.Supp. 354, affd. in part & revd. in part (D.C.Cir. 1984) 746 F.2d 4,

and did not disclose their actual hourly rates in the matter. The client urged this court to cap the attorney fee award to that which was actually incurred. We declined to do so. We were guided by the reasoning in *PLCM* to hold the rate paid by the insurer did not represent the maximum reasonable hourly rate. (*Nemecek, supra,* at p. 651.)

The court in *Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 702–703 (*Syers*), also relied on an adjusted *Laffey* Matrix to fix a reasonable hourly rate that exceeded the actual rate paid. There, the prevailing defendants conceded they were represented by an insurance defense firm that charged discounted rates. The trial court did not request, and the defense attorneys did not submit, their actual rates for the trial court's consideration. (*Syers, supra,* at p. 696.)

The court held on appeal that "[t]here is no requirement that the reasonable market rate mirror the *actual* rate billed." (*Syers, supra,* 226 Cal.App.4th at p. 701.) The *Syers* court rejected the plaintiff's argument that the lodestar market rate determination was only meant to apply to contingency fee cases, not to cases in which payment is guaranteed. The court found there was no abuse of discretion because the lodestar method was appropriately used and "the trial court is in the best position to value the services rendered by the attorneys in his or her courtroom." (*Id.* at p. 702.)

The *Syers* court observed, "A reasonable trial court might determine that the 'similar work' or 'comparable legal services' related to insurance defense litigation, rather than to civil

---

(*Laffey*), overruled on other grounds in *Save Our Cumberland Mountains, Inc. v. Hodel* (D.C.Cir. 1988) 857 F.2d 1516, 1525.)

litigation in general.  Were the court to so conclude, it could view the relevant 'market' to be that of insurance defense litigation and litigators, rather than general civil litigation.  The 'market rate' for such services might be limited accordingly.  Again, we emphasize that such determinations lie within the broad discretion of the trial court.  They raise a number of issues, not the least of which is that the prevailing plaintiff's privately retained counsel in such circumstances could claim a 'market rate' reasonable fee far in excess of the 'market rate' reasonable fee that could be claimed by a prevailing opponent whose defense counsel was retained by an insurer." (*Syers, supra,* 226 Cal.App.4th at pp. 702–703; see also *Chacon, supra,* 181 Cal.App.4th at p. 1260 [attorney fees award affirmed where the trial court applied a market rate of $350 per hour even though the fee agreement with the prevailing plaintiffs provided for a reasonable hourly rate of $300 per hour].)

Pasternack attempts to distinguish these cases on the ground the hourly rate in these cases was neither paid nor fixed in advance.  Pasternack contends the courts in those cases were required to set a "reasonable fee" and did so using the lodestar method.  By contrast, he argues, there is no need for the court to set a reasonable hourly fee in this case because the fee paid by McCullough's insurer is undisputed.  We are not persuaded.  None of the cases limit their holding in this way.  Indeed, *Syers* expressly rejected the argument that the market rate approach only applied to contingency fee cases. (*Syers, supra,* 226 Cal.App.4th at p. 696.)

Neither are we persuaded by the U.S. Supreme Court cases cited by Pasternack. *City of Burlington v. Dague* (1992) 505 U.S. 557, 563, and *Perdue v. Kenny A.* (2010) 559 U.S. 542, 558–559,

10

address whether an enhancement to a lodestar is appropriate. Here, the trial court made no enhancement to the lodestar. It simply determined the market rate for each of the attorneys working on McCullough's defense.

In sum, *PLCM, Nemececk, Syers,* and their like tell us that a trial court has discretion to award an hourly rate under the lodestar method that exceeds the rate that was actually incurred or paid. These cases also disclose the trial court's wide discretion to consider the prevailing party's fee agreement in awarding attorney fees. Here, the trial court properly determined the market rate for experienced appellate lawyers in Los Angeles County and "exercise[d] its discretion to not so narrowly focus on the 'package rate' agreed to in this matter."

We now turn to decide whether the trial court nevertheless abused its discretion because the amount it awarded shocked the conscience. Pasternack argues the lodestar amount calculated by the trial court was unreasonable and should be reversed.[6] Not so.

---

[6] In footnote 21 of the opening brief, Pasternack contends the fee award should be further reduced by thousands of dollars because these sums were improper fee enhancements or were for work unrelated to the anti-SLAPP motion. Pasternack has forfeited this argument. (*Hall v. Department of Motor Vehicles* (2018) 26 Cal.App.5th 182, 193 [argument in footnote forfeited]; *Sabi v. Sterling* (2010) 183 Cal.App.4th 916, 947 ["Footnotes are not the appropriate vehicle for stating contentions on appeal."].) Even if it were not forfeited, we reject his claim that the trial court abused its discretion to award an enhancement to Weatherup's fee. As discussed, the trial court properly determined the reasonable hourly rate for work performed by Weatherup and the other Lewis Brisbois attorneys. The trial court did not add an enhancement to Weatherup's rate.

The record shows Lewis Brisbois submitted evidence regarding the hours expended and reasonable rates for the work done.  (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 396 ["the verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous."].)  The trial court was entitled to rely on Lewis Brisbois's declarations to determine the reasonable rates for experienced attorneys in Los Angeles County.  "[T]he trial court is in the best position to value the services rendered by the attorneys in his or her courtroom."  (*Syers, supra,* 226 Cal.App.4th at p. 702.)

The trial court thoroughly examined the record and reduced both the time claimed and the hourly rate for one of the partners.  Indeed, "[t]he award granted was significantly reduced from the original request as a result of the trial court's indication that it did not look favorably on the full request.  Thus, it clearly appears that the trial court exercised its discretion.  In these circumstances, we cannot conclude that the award of attorney fees shocks the conscience or suggests that passion and prejudice

---

Moreover, Pasternack acknowledges in his own calculations that the trial court struck 6.8 hours from the 11.5 hours that Pasternack argued represented time billed for activities unrelated to the anti-SLAPP motion.  The trial court could have reached a different conclusion as to the 4.7 hours it did not exclude from the fee award.  It was silent on the issue.  Therefore, " ' "[a]ll intendments and presumptions are indulged to support [the order] on matters as to which the record is silent[.]" ' "  (*Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 563.)

12

had a part in it.  As such, we conclude that the trial court did not abuse its discretion in awarding the attorney fees that it did." (*Akins v. Enterprise Rent–A–Car Co.* (2000) 79 Cal.App.4th 1127, 1134.)

## DISPOSITION

The attorney fees award is affirmed.  McCullough to recover his costs on appeal.

BIGELOW, P. J.

We concur:

GRIMES, J.

STRATTON, J.

Filed 6/25/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LAWRENCE PASTERNACK,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>THOMAS B. MCCULLOUGH, JR.,<br>et al.<br><br>    Defendants and Respondents. | B302137<br><br>(Los Angeles County<br>Super. Ct. No. SC121723)<br><br>ORDER CERTIFYING<br>PUBLICATION<br><br>[No change in the judgment] |

THE COURT:

    The opinion in the above entitled matter was filed on June 7, 2021, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

BIGELOW, P. J.          GRIMES, J.         STRATTON, J.